# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| UNITED SATES OF AMERICA | ) |
| | ) |
| | ) 05 CR 0255 |
| v. | ) |
| | ) Judge John W. Darrah |
| HOSSEIN ESFAHANI, | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

Presently before the Court is Defendant's Motion to Dismiss Counts Two Through One Hundred Ninety-One for Violation of the Constitutional Doctrine of Non-Delegation and Motion to Dismiss as Multiplicious Counts One Hundred through One Hundred Ninety-One.

## BACKGROUND

On June 30, 2005, a grand jury returned a one-hundred and ninety-one-count indictment against Defendant, Hossein Esfahani. Count One charges that from October 27, 2001 through at least March 22, 2005, Defendant knowingly controlled, managed, supervised, and directed an unlicensed money-transmitting business, constituting a felony under Illinois state law, 205 ILCS 657/90(h), in violation of 18 U.S.C. § 1960(a). Counts Two through Ninety-Three charge that in the same time frame, Defendant transmitted funds to and from Iran by means of wire transfers through intermediary money exchanges in Dubai, United Arab Emirates, from which funds were further transmitted to Iran, without first having obtained authorization from the Secretary of the Treasury and his designee, the Office of Foreign Asset Control ("OFAC"), in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1702, 1705, Exec. Order Nos. 12957, 12959, and 13059, and Title 31, C.F.R. §§ 560.206, 560.208. Counts Ninety-Four through Ninety-Nine charge that Defendant, through use of a hawala (an alternative remittance system which

transfers money without the immediate physical or electronic transfer of funds), violated the IEEPA by transferring funds and assets to Iran on six separate dates without first having obtained authorization from the Secretary of the Treasury and his designee, the OFAC. Counts One Hundred through One Hundred Ninety-One charge that Defendant transmitted and transferred funds from an account at Harris Bank to Dubai, United Arab Emirates, from October 31, 2001 through February 14, 2005, with the intent to promote the carrying on of specified unlawful activity ("SUA"), in violation of 18 U.S.C. § 1956(a)(2)(A) (money laundering). These charges stem from the same series of wire transfers and in furtherance of Defendant's IEEPA violations alleged in Counts Two through Ninety-Three.

## ANALYSIS

Defendant argues that Counts Two through One Hundred Ninety-One should be dismissed because the IEEPA's delegation of authority to the President of the United States to promulgate Executive Orders and regulations backed by criminal penalties violates the non-delegation doctrine.

The non-delegation doctrine stems from the principle of separation of powers that underlies the tripartite system of government. *See Mistretta v. United States*, 488 U.S. 361, 371 (1989) (*Mistretta*). The Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const., Art. I, § 1. Accordingly, "'the integrity and maintenance of the system of government ordained by the Constitution' mandate that Congress generally cannot delegate its legislative power to another Branch." *Mistretta*, 488 U.S. at 371-72 (quoting *Filed v. Clark*, 143 U.S. 649, 692 (1892). However, the separation-of-powers principle and the non-delegation doctrine do not prevent Congress from obtaining assistance from other branches of government. *See Mistretta*, 488 U.S. at 372. "In determining what [Congress] may do

2

in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination." *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 406 (1928) (*J.W. Hampton, Jr.*). As long as Congress "shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power." *J.W. Hampton, Jr.*, 276 U.S. at 409.

In applying this "intelligible principle" test to delegations of authority by Congress, jurisprudence is "driven by a practical understanding that in our increasingly complex society, replete with ever changing and more technical problems, Congress simply cannot do its job absent an ability to delegate power under broad general directives." *Mistretta*, 488 U.S. at 372. Accordingly, a delegation of authority by Congress does not run afoul of the non-delegation doctrine if "Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta*, 488 U.S. at 372.

The IEEPA provides authority to the President "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to that threat." 50 U.S.C. § 1701(a). In times of national emergency, the President has the authority to "investigate, regulate, direct and compel, nullify, void prevent or prohibit" a wide variety of interests and transactions regarding "any property in which any foreign country or a national thereof has any interest." 50 U.S.C. §§ 1701, 1702. These actions include the imposition of embargoes, trade sanctions, or other actions as necessary to deal with emergencies

threatening the national security, foreign policy, or economy of the United States. 50 U.S.C. § 1701, *et seq*. The statute also provides for criminal and civil enforcement and sanctions. Any individual or officer, director, or agent of any corporation who knowingly participates in a violation of any license, order, or regulation issued under authority of the IEEPA is subject to a fine up to $50,000 and a prison term of up to ten years. 50 U.S.C. § 1705. The authority granted to the President under the IEEPA can "only be exercised to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared for purposes of this chapter and may not be exercised for any other purpose." 50 U.S.C. § 1701(b).

The IEEPA specifically delineates what authorities have been granted. These authorities include, in part:

> (a)(1) . . . the President may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise –
> (A) investigate, regulate, prohibit–
> (i) any transactions in foreign exchange,
> (ii) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transaction or payments involve any interest of any foreign country or a national thereof,
> (iii) the importing or exporting of currency or securities,
> by any person . . . .
> (B) investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . .
>
> (2) In exercising the authorities granted by paragraph (1), the President may require any person to keep a full record of, and to furnish under oath, in the form of reports or otherwise, complete

> information relative to any act or transaction referred to in paragraph (1) . . . .
>
> (3) . . . No person shall be held liable in any court for or with respect to anything done or omitted in good faith . . . .
>
> (b) The authority granted to the President by this section does not include the authority to regulate or prohibit, directly or indirectly–
>> (1) any postal, telegraphic, telephonic, or other personal communication, which does not involve a transfer of anything of value;
>> (2) donations . . . .
>> (3) the importation . . . or exportation . . . any information or informational materials . . . .
>> (4) any transactions ordinarily incident to travel . . . .

50 U.S.C. § 1702. In every possible instance, the President should consult with Congress before exercising any of the authorities granted by the IEEPA. 50 U.S.C. § 1703(a). The President is also required to transmit reports to Congress when he exercised his authority under the IEEPA. 50 U.S.C. § 1703(b).

In 1979, in response to and in the wake of the Iranian hostage crisis, the President exercised his statutory authority under the IEEPA to declare a national emergency with respect to relations with Iran. *See Dames & Moore v. Regan*, 453 U.S. 654, 662 (1981) (*Dames & Moore*); Exec. Order No. 12170 (1980). Since that time, Presidents have invoked IEEPA authority to impose a variety of sanctions and prohibitions on investment and trade with Iran in response to various declared national emergencies in relations between Iran and the United States. *See, e.g.*, Exec. Order No. 12957 (1995) (prohibiting United States' involvement with or participation in petroleum development in Iran); Exec. Order No. 12959 (1995) (strengthening trade sanctions with Iran); Executive Order No. 13059 (1997) (clarifying Exec. Order Nos. 12957 and 12959 and confirming that all trade and investment activities with Iran by United States persons prohibited). The Executive Orders also

5

authorized the Secretary of the Treasury to promulgate regulations, generally referred to as the Iranian Transactions Regulations ("ITR"), prohibiting certain types of transactions with Iran. *See generally* 31 C.F.R. Part 560.

The ITR imposes, in part, broad restrictions on trade and various types of transactions with Iran, subject to limited exemptions and licenses authorized by the Treasury Department's Office of Foreign Assets Control ("OFAC"). *See, e.g.,* 31 C.F.R. §§ 560.206, 560.208. Civil and/or criminal penalties may be imposed for violations of the IEEPA, including any violation of any license, order, or regulation issued under the IEEPA. 50 U.S.C. § 1705; 31 C.F.R. § 560.701(a).

Defendant argues that Congress violated the non-delegation doctrine by failing to provide the President with an intelligible principle that clearly delineates the purpose and scope of the delegated authority, as evidenced by the President's outlawing the mere transfer of money from a United States citizen to Dubai, United Arab Emirates or Iran.[1] As evidenced by the above-cited portions of the IEEPA, Defendant's argument is meritless.

The IEEPA, specifies the general policy and purpose of the IEEPA – "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy or economy of the United States, if the President declares a national emergency with respect to such threat." 50 U.S.C. § 1701(a). The President's authority is restricted in that it "may only be exercised to deal with an unusual and extraordinary

---

[1] Defendant opines that, under the current state of the law, if a United States citizen sends a birthday card with a one-dollar bill enclosed to his grandparent in Iran, a criminal act has occurred. However, Defendant's example would fail under the good faith exception found in Section 1702.

threat with respect to which a national emergency has been declared." 50 U.S.C. § 1701(b). The means and scope of the President's authority is further specified in Section 1702, and additional limitations are set forth in Section 1703.

Based on the above, Congress did not violate the non-delegation doctrine in the IEEPA because the IEEPA "clearly delineates the general policy, the public agency which is to apply it, and the boundaries of [the] delegated authority." *See Mistretta*, 488 U.S. at 372 (Congress's delegation of authority to the Sentencing Commission was sufficiently specific and detailed to meet constitutional requirements); *Touby v. United States*, 500 U.S. 160, 165 (1991) (Congress's delegation to Attorney General to schedule controlled substances pursuant to 21 U.S.C. §§ 811(h)(6), 877 was sufficiently specific to not violate the non-delegation doctrine); *Dames & Moore*, 453 U.S. at 675 (holding that IEEPA constituted specific congressional authorization to the President to nullify attachments and order the transfer of Iranian assets); *United States v. Arch Trading Co.*, 987 F.2d 1087, 1093-94 (4th Cir. 1993) (*Arch Trading Co.*) (criminal conduct included in IEEPA did not violate the non-delegation doctrine)[2]; *United States v. Anvari-Hamedani*, 378 F. Supp. 2d 821, 829-30 (N.D. Ohio 2005) (*Anvari-Hamedani*) (IEEPA did not violate non-delegation doctrine).

Defendant also argues that Counts One Hundred through One Hundred Ninety-One should be dismissed because these counts are based on the same transfer of funds found in Counts Two through Ninety-Three.

The government may not charge a single offense in multiple counts to prevent multiple punishments for the same act in violation of the Double Jeopardy Clause of the Fifth Amendment.

---

[2]The Fourth Circuit also noted two additional factors which supported Congress's grant of authority to the President in the IEEPA: (1) the President's powers to make determinations regarding foreign policy and (2) Congressional authorization and acceptance of the President's actions. *Arch Trading Co.*, 987 F.2d at 1093-94.

7

*See United States v. Snyder*, 189 F.3d 640, 647 (7th Cir. 1999) (*Snyder*). In determining whether a course of conduct constitutes one or more crimes, the court is guided by the legislative intent. *See Snyder*, 189 F.3d at 647. The test for multiplicity looks to "whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002). If an element is required to prove an offense in one count which is not required to prove another count, there is no multiplicity. *See United States v. Gonzalez*, 933 F.2d 417, 424 (7th Cir. 1993).

Here, Defendant has been charged with violating the IEEPA, 50 U.S.C. §§ 1702, 1705, Exec. Order Nos. 12957, 12959, and 13059, and Title 31, C.F.R. §§ 560.206, 560.208 (Counts Two through Ninety-Three), and money laundering in violation of 18 U.S.C. § 1956(a)(2)(A) (Counts One Hundred through One Hundred Ninety-One).

As stated above, the IEEPA grants the President power to prohibit transfers or transactions involving foreign countries in times of declared national emergency. *See* 50 U.S.C. §§ 1701, 1702. Pursuant to these Sections, Exec. Order Nos. 12957, 12959, and 13059 were signed prohibiting all trade and investment activities with Iran, including any commitment or contribution of funds or other assets to Iran, by a United States person, except for specifically exempted purposes or under the authority of a license from the Secretary of the Treasury, through his designee, the OFAC. The IEEPA also establishes a fine and/or imprisonment for those convicted of "willful" violations or attempted violations of orders issued pursuant to the IEEPA. 50 U.S.C. § 1705. Based on the above language, an IEEPA violation requires proof that: (1) a United States person (2) willfully committed, or willfully attempted to commit, funds or other assets (3) to Iran. *See* 50 U.S.C. §§ 1701, 1702; Exec. Order Nos. 12957, 12959, and 13059; *Anvari-Hamedani*, 378 F. Supp. 2d at 832.

Section 1956(a)(2)(A) provides, in pertinent part:

> Whoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States –
> (A) with the intent to promote the carrying on of specified unlawful activity; or . . . .

18 U.S.C. 1956(a)(2)(A). Congress defined the term "specified unlawful activity" to include an offense under the IEEPA. 18 U.S.C. § 1956(c)(7)(D). Based on the above language, a violation of Section 1956(a)(2)(A) requires proof of: (1) a transfer or an attempt to transfer funds (2) from a place in the United States (3) to or through a place outside the United States (4) with the intent to promote the carrying on of a specified unlawful activity (which includes a violation of the IEEPA). *See* 18 U.S.C. §§ 1956(a)(2)(A), (c)(7)(D); *Anvari-Hamedani*, 378 F. Supp. 2d at 832.

Under the *Blockburger* test, the two offenses require proof of fact which the other does not. The IEEPA offense requires proof that Defendant acted willfully when he contributed funds to Iran, *see* 50 U.S.C. § 1705(b); and the money laundering offense requires proof that Defendant acted with the intent to promote the carrying on of a specified unlawful activity. Furthermore, Congress's inclusion of a violation of the IEEPA as a specified unlawful activity evidences Congress contemplated that an individual could be charged with a violation of the IEEPA and money laundering. *See Anvari-Hamedani*, 378 F. Supp. 2d at 832 (finding that charges of violation of IEEPA based on the transfer of funds to Iran was not multiplicious of charges of violation of Section 1956(a)(2)(A) based on the transfer of the same funds). Accordingly, the charged violations of the IEEPA are not duplicative of the charges of money laundering.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Counts Two Through One Hundred Ninety-One for Violation of the Constitutional Doctrine of Non-Delegation and Motion to Dismiss as Multiplicious Counts One Hundred through One Hundred Ninety-One are denied.

Dated: January 17, 2006

JOHN W. DARRAH
United States District Judge